UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

GARY MONTGOMERY                                                                      PLAINTIFF

VS.                                                            CIVIL ACTION NO. 2:14cv54-DPJ-FKB

CITY OF LUMBERTON; LAMAR COUNTY;                                         DEFENDANTS
LAMAR COUNTY SHERIFF'S DEPARTMENT;
AND JOHN DOES 1-5

ORDER

This case is before the Court on Defendants Lamar County's and Sheriff Danny Rigel's Motion to Dismiss State Law Claims [19]. The Court, having considered the issues and the parties' submissions in light of the applicable standards, finds that moving Defendants' Motion should be granted.

I.   Facts and Procedural History

Plaintiff Gary Montgomery averred the following facts in his Amended Complaint. On June 21, 2013, Montgomery was returning to his home after receiving a haircut. Just as he arrived at his driveway, Lumberton police officers pulled him over for driving without headlights, though his headlights were illuminated at the time. Am. Compl. [14] ¶¶ 10–11.

After the stop, the officers detected the smell of alcohol from a third party's beer that had previously spilled under the seats. *Id*. ¶ 12. When placed under arrest, Montgomery informed the officers that he had various medical conditions, including cancer, and asked to enter his house to retrieve and take his medication. *Id*. ¶ 14. The officers denied his request, and he was transported to the Lamar County Jail ("LCJ") on suspicion of DUI. *Id*. ¶¶ 14–15. No field sobriety tests of any sort were conducted prior to the arrest. *Id*. ¶ 15.

Once at the jail, Montgomery requested medical attention, but the officers denied his request. *Id.* ¶¶ 16–17.  As a result, his legs began to swell. *Id.* ¶ 17.  That condition made it difficult for Montgomery to comply with the officers' demand that he change into a prison jumpsuit. *Id*. ¶ 18.  Upset with Montgomery's lack of cooperation, the officers forcibly disrobed Montgomery, breaking his shoulder in the process. *Id*. ¶ 19.  He was again denied medical attention for this and other complaints and was released from jail the next morning. *Id*. ¶ 22.

In addition to federal claims that are not presently disputed, Montgomery asserts the following state-law claims: negligence, gross negligence, trespass, excessive force, assault, battery, defamation, negligent training, negligent supervision, malicious prosecution, harassment, conspiracy, outrage,[1] failure to provide medical treatment, and false imprisonment. *Id*. ¶ 73.

Defendants Lamar County and Sheriff Danny Rigel now move for dismissal of Montgomery's state-law claims as they relate to them.  It appears from the Amended Complaint that those claims are limited to acts occurring after Montgomery arrived at the LCJ.  There is no allegation that the Sheriff's Department was involved in the initial arrest made by officers from Defendant City of Lumberton.

II.     Analysis

   A.     Conceded Claims

The Mississippi Tort Claims Act ("MTCA") waives sovereign immunity for some, but not all, claims against governmental entities and employees.  In this case, Defendants assert that many of Montgomery's claims are excepted from the limited waiver.  More specifically,

---

[1] As the parties note in their briefing, the outrage tort is equivalent to intentional infliction of emotional distress under Mississippi law.  *See Jones v. Jackson State Univ.*, No. 3:07cv72-DPJ-JCS, 2008 WL 682411, at *5 (S.D. Miss. Mar. 7, 2008)**.**  For the sake of clarity, this Order will refer to this tort as "outrage" as pleaded in the Amended Complaint.

2

Defendants claim that the negligent training and negligent supervision claims are barred by section 11-46-9(1)(d) and that the trespass, assault, battery, defamation, malicious prosecution, conspiracy, and outrage claims are barred by section 11-45-5(2). Though Montgomery referenced these claims in his response, he never addressed Defendants' statutory arguments for their dismissal and therefore abandoned these claims. *See Estate of Pernell v. City of Columbus*, No. 1:08CV0040-DD, 2010 WL 1737638, at *4 (N.D. Miss. Apr. 28, 2010) (holding that failure to argue a point in response amounts to a concession of the issue).

      B.      Disputed Claims

Montgomery has not, however, abandoned all state-law claims. He disputes Defendants contention that the remaining state-law claims are barred by Mississippi Code section 11-46-9(1)(m). In relevant part, that section states:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
> . . .
> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed . . . .

Miss. Code Ann. § 11-46-9(1)(m).

According to Defendants, this statute bars Montgomery's claims for negligence, gross negligence, excessive force, false imprisonment, harassment, outrage, and failure to provide medical treatment that "accrued while the Plaintiff was incarcerated in the LCJ." Def.'s Mem. [20] at 4, 8 n.3. And while Montgomery offers three primary arguments in response, they have either been expressly rejected by the Mississippi Supreme Court or would otherwise conflict with Mississippi's construction of its statute.

3

Montgomery first attempts to evade section 11-46-9(1)(m) by arguing that he was never lawfully detained. Pl.'s Resp. [21] at 4–5. But his only authority for this argument was rejected as dicta in *Brooks v. Pennington*, where the court held that "[i]n granting immunity from claims brought by an inmate, Section 11-46-9(1)(m) does not distinguish between those lawfully and those unlawfully within the custody of the state." 995 So. 2d 733, 737 (Miss. Ct. App. 2007) (en banc); *see also Fleming v. Tunica Cnty. Miss.*, 497 F. App'x 381, 389 (5th Cir. 2012) (per curiam) (noting that "the plain language of § 11-46-9(1)(m) does not contemplate any distinction between inmates being detained pursuant to a lawful court order and unlawfully-held detainees").

Montgomery also argues that "inmate" status begins when the plaintiff is actually convicted, citing definitions found in a different title of the Mississippi Code. *See* Pl.'s Resp. [21] at 7 (citing Miss. Code Ann. § 47-5-403). Those definitions have no application. Instead, the Mississippi Supreme Court defined "inmate," as used in this statute, as "a person confined to a prison, penitentiary or the like." *Wallace v. Town of Raleigh*, 815 So. 2d 1203, 1207–08 (Miss. 2002) (quoting Black's Law Dictionary 788 (6th ed. 1990). Consistent with that definition, the Mississippi Supreme Court has rejected Montgomery's argument that inmate status begins with a conviction. *See Liggans v. Coahoma Cnty. Sheriff's Dep't*, 823 So. 2d 1152, 1155 (Miss. 2002).

Finally, Montgomery contends that he was not an "inmate" under section 11-46-9(1)(m) at the time his claims accrued because he had not been booked. Pl.'s Resp. [21] at 6–7. There are no Mississippi cases drawing this distinction, and it is not reflected in the plain language of the statute. More to the point, Montgomery's interpretation conflicts with the Mississippi Supreme Court's construction of the term in *Wallace* and *Liggans*. *See also Love v. Sunflower*

4

*Cnty. Sheriff's Dep't*, 860 So. 2d 797, 800 (Miss. 2003) (en banc) (applying *Wallace* definition to inmate who was cleared for release).[2]

III.     Conclusion

The Court has considered all of the parties' arguments.  Those not specifically addressed would not have changed the outcome.  Defendants' Motion [19] is granted, and all state-law claims against the moving Defendants are dismissed.

**SO ORDERED AND ADJUDGED** this the 12th day of September, 2014.

                                                          s/ *Daniel P. Jordan III*
                                                          UNITED STATES DISTRICT JUDGE

---

[2]Montgomery does cite *Brooks* for the proposition that a claim accrues when a claimant is received by the jail. Pl.'s Resp. [21] at 5–6.  He seems to suggest that he would therefore have a claim for conduct occurring after he was received at LCJ but before he was booked or convicted—*i.e.*, all of the conduct giving rise to the disputed state-law claims.  If that is what Montgomery is suggesting, then it would stretch *Brooks* too far.  In *Brooks*, the plaintiff had been released from prison after discharging his sentence but was then mistakenly arrested by a bail bondsman who took him back to jail.  Once there, the county accepted him and took him into custody. *Id*. at 737.  The Mississippi Court of Appeals concluded—with two dissents on this point—that the false-arrest claim accrued when the jail first received the plaintiff but that he was not technically an inmate at that time. *Id.* at 738.  The opinion said nothing about "inmate" status beginning at booking or with a conviction and focused more on the duties of a receiving officer when faced with a released inmate.  In this case, by contrast, Montgomery was never released, and the now disputed claims occurred after he was soundly in the LCJ's custody. *See Fleming*, 497 F. App'x at 389 (limiting *Brooks* and holding that "Fleming's situation is different from that of the plaintiff in *Brooks*, because unlike that plaintiff, Fleming was not actually released from custody once his sentence was suspended and he was placed on probation").  A contrary holding would also contradict the Mississippi Supreme Court's *Liggans* opinion.